IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES E. JENKINS,

        Plaintiff,

  vs.                                    Civil Action 2:13-CV-07
                                             Judge Sargus
                                             Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

**I. Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is now before the Court for consideration of plaintiff's *Statement of Errors*, Doc. No. 12, the Commissioner's *Memorandum in Opposition*, Doc. No. 15, and *Plaintiff's Reply*, Doc. No. 16.

Plaintiff's current applications[1] for benefits claim disability since July 26, 2006.[2] *PAGEID* 235, 239. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

---

[1] Plaintiff's previous application for Social Security benefits was denied on July 25, 2006. *PAGEID* 65.
[2] Plaintiff later amended his date of onset to September 30, 2009. *PAGEID* 81. His insured status for disability insurance benefits lapsed on September 30, 2006. *PAGEID* 59.

1

An administrative hearing was held on September 29, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Victor Alberigi, who testified as a vocational expert. *PAGEID* 78. In a decision dated August 18, 2011, the administrative law judge concluded that plaintiff was not disabled from September 30, 2009, through the date of the administrative decision. *PAGEID* 70-71. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 29, 2012. *PAGEID* 48.

Plaintiff was 37 years of age on the date of the administrative decision. *See PAGEID* 48, 235. Plaintiff has some college credit, is able to communicate in English, and has past relevant work as a forklift operator and auto detailer. *PAGEID* 69, 266, 273. He has not engaged in substantial gainful activity since September 30, 2009, his amended date of onset of disability. *PAGEID* 59.

## II. Medical Evidence

Roger Kauffman, M.D., treated plaintiff from June 21, 2006 to December 28, 2007. *PAGEID* 614-35. In December 2007, plaintiff reported occasional numbness in his arms and legs and a concern that he might have rheumatoid arthritis. *PAGEID* 635. Upon examination, plaintiff had a good range of motion in all extremities, full strength throughout, and no synovitis in his joints. *Id*. Dr. Kauffman diagnosed osteoarthritis and noted no evidence of rheumatoid arthritis by examination or previous lab studies. *Id*.

On November 20, 2006, neurosurgeon Joseph Shehadi, M.D., performed an L4-L5 transforaminal lumbar interbody fusion at L4-L5. *PAGEID* 479-83.

In March 2007, plaintiff reported numbness in the posterior aspect of his left leg. *PAGEID* 466. Plaintiff attended six sessions of physical therapy and, in April 2007, reported an 85 percent improvement. *PAGEID* 465-66; 567-82.

William O. Smith, M.D., consultatively examined plaintiff on January 26, 2010. *PAGEID* 709-15. Plaintiff reported, *inter alia*, back and leg pain and numbness in his legs. *PAGEID* 713. Upon examination, plaintiff had a somewhat limited range of motion in his neck and back, but exhibited full strength in all muscle groups, normal sensation and reflexes, and normal grasp, manipulation, and fine coordination. *PAGEID* 709-12; 714. Plaintiff had three positive Waddell signs and his "[p]inch [was] weaker in the right hand than the left, but effort was questionable." *PAGEID* 715. Dr. Smith opined that plaintiff "would probably be classified as a failed back syndrome." *Id*. He also "believe[d] [that plaintiff] could certainly do computer type work at the present time." *Id*.

Dimitri Teague, M.D., reviewed the record for the state agency on February 23, 2010, and opined that plaintiff's physical impairments were not severe. *PAGEID* 716. According to Dr. Teague, "[s]ignificant functional limitation due to lumbar and cervical degenerative disease is not supported in the records, and mild degenerative cervical and lumbar disc disease is not found to be a 'severe' impairment." *Id*. Dr. Teague adopted the RFC found by an administrative law judge in the latter's July 25, 2006 decision. *Id*.

Dr. Smith consultatively examined plaintiff a second time on June 29, 2010. *PAGEID* 719-25. Plaintiff reported, *inter alia*, back and leg pain

and numbness in his arms.  *PAGEID* 719.  Plaintiff showed "non-organic Waddell signs" and his grip strength was 125 to 130 pounds in the right hand and 95 to 110 in the left hand.  *PAGEID* 720.  Dr. Smith also noted "some bizarre findings on median nerve percussion of the left wrist, which brings on tingling in the left ulnar groove."  *PAGEID* 721.  Dr. Smith opined that plaintiff has "non-anatomic sensory loss in both upper extremities, but no weakness or reflex change."  *Id*.  He diagnosed "possible carpal tunnel problem" and opined that plaintiff "can do sedentary to light work at the present time."  *Id*.

State agency physician Teresita Cruz, M.D., evaluated plaintiff's physical residual functional capacity on July 12, 2010.  *PAGEID* 662-69.  According to Dr. Cruz, plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday.  *PAGEID* 663.  Dr. Cruz futher opined that plaintiff can occasionally kneel; climb ladders, ropes, and scaffolds; and reach overhead, bilaterally.  *PAGEID* 664-65.

Plaintiff began treating with Jamie Robyn, M.D., in the primary care clinic at the Department of Veterans Affairs ("VA") on September 9, 2010.  *PAGEID* 939-44.   Plaintiff reported a history of bipolar disorder, chronic back pain, hydrocephalus, and hearing loss.  *PAGEID* 940.  Plaintiff also reported decreased pain since his November 2006 surgery, but claimed continued numbness and paraesthesias in both arms and legs.  He reported that he needs a cane to walk.  *Id*.  Dr. Robyn assessed chronic back pain and ordered x-rays and a physical therapy assessment. *PAGEID* 939-44.

A September 2010 x-ray of plaintiff's cervical spine revealed no acute bony abnormalities or joint changes. *PAGEID* 766. X-rays of the lumbosacral spine showed osteopenia of the visualized bones without any acute compression fracture. *PAGEID* 767. Plaintiff started physical therapy in October 2010 and was provided a TENS unit for pain. *PAGEID* 924-28.

Dr. Robyn also referred plaintiff to the Rheumatology Clinic at the VA due to a "6 month history of polyarthralgias with sed rate 35 ANA pending." *PAGEID* 806. Plaintiff was evaluated by rheumatologist Ali Ajam, M.D., on October 5, 2010. *PAGEID* 807-09. Plaintiff had an "RF of 22, mildly positive. He has a lot of joint pains, says mostly in the neck, as well as hands/wrists and knees." *PAGEID* 807. Upon examination, Dr. Ajam found that plaintiff had "no activie synovitis in hands/wrists, able to flex/extend wrists, good hand grip/curl, several tender pips, able to make a fist, no elbow contractures, good from of shoulders and knees, + forefeet squeeze tenderness." *PAGEID* 808. Dr. Ajam diagnosed "probable rheumatoid arthritis" and "significant degenerative arthritis." *PAGEID* 809. He prescribed Plaquenil. On December 28, 2010, plaintiff reported that the Plaquenil was doing "really, really well," but that he was "having a hard time holding on to anything for a prolonged period of time." *PAGEID* 897. In March 2011, plaintiff reported that Plaquenil "helped quite a bit" and that his swelling and stiffness were reduced. *PAGEID* 853-54.

Plaintiff treated with occupational therapist James P. Ronyak at the VA in January 2011. *PAGEID* 893. Plaintiff's grip strength was 85 pounds in the right hand and 90 pounds in the left hand. *Id*. Mr. Ronyak

recommended a home paraffin unit, arthritis gloves, and a standard reacher to assist with plaintiff's symptoms. *Id*.

On June 14, 2011, Dr. Robyn opined that plaintiff was limited to lifting less than ten pounds occasionally, standing and walking no more than one hour without interruption and no more than one hour in an eight-hour workday; because rheumatoid arthritis causes "pain if in one position too long," Dr. Robyn limited plaintiff to sitting for no more than one hour in an eight-hour workday and to 20 minutes without interruption. *PAGEID* 987. According to Dr. Robyn, the pain from plaintiff's rheumatoid arthritis causes a balance impairment; plaintiff must use his balance dog to assist him. *PAGEID* 988. Dr. Robyn opined that plaintiff can occasionally stoop and kneel, can never climb, balance, crouch, or crawl, and is impaired in his ability to handle and feel because of numbness in his hands. *Id*. Dr. Robyn further opined that plaintiff cannot work around moving machinery, temperature extremes, humidity, and vibration. *Id*.

**III. September 29, 2011 Administrative Hearing**

Plaintiff testified that he suffers from rheumatoid arthritis, which causes swelling in his hands, balance issues, and numbness in his legs. *PAGEID* 85, 99. Medication has reduced the swelling in his hands "a little bit," but his "fingers turn inwards," his "legs are turning out," and he "can barely hold a cup of coffee in [his] hands sometimes." *PAGEID* 85-86, 117. The numbness in his legs affects his balance; he has "a tendency to fall on [his] face." *PAGEID* 99. His service dog helps with his balance. *PAGEID* 98-99. He also uses prescribed arthritis gloves, a TENS unit and a cane on a daily basis. *PAGEID* 88, 102-03.

6

Plaintiff complained of severe pain in his back, legs, and arms; he lost feeling in his legs the year prior to the hearing. *PAGEID* 86-88. He changes positions every 10 to 15 minutes because of pain in his shoulders and back. *PAGEID* 103-04, 106. Pain awakens him. *PAGEID* 108. Physical therapy helps with the pain, as does prescribed stretches and exercises with an elastic band. *PAGEID* 106-07.

Plaintiff also testified that he suffers from post-traumatic stress disorder ("PTSD"), degenerative disc disease, and bipolar disorder. *PAGEID* 89. When asked the cause of the PTSD, plaintiff stated that he "[h]ad a lot of guns put in [his] face," he was "robbed when [he was] younger," and that "[a] lot of people die[d] in front of [him]." *PAGEID* 89. Plaintiff testified that he served in the Army for 8 years and was honorably discharged in 2003. *PAGEID* 95. He saw combat in Iraq during "Operation Joy." *PAGEID* 115. He explained that his PTSD does not qualify for VA disability benefits because his service dates do not fall within a certain date bracket. *PAGEID* 115. Because of his PTDS, he is "stressed out" when "just dealing with anybody, going to Wal-Mart or a gas station." *PAGEID* 90. Plaintiff cannot "go to the grocery store where there's 10, 15 people in it at a time" because he feels like he "should protect everybody." *PAGEID* 109-10. He experiences flashbacks or nightmares almost nightly. *PAGEID* 110, 115.

Describing his bipolar disorder, plaintiff testified that he is mostly manic and that he becomes so anxious that he vibrates, his legs start moving, and he bounces. *PAGEID* 110. Zoloft helps calm him down "a bit." *PAGEID* 108-09.

7

Plaintiff lives with his wife and service dog. *PAGEID* 97-101. His wife washes plaintiff, helps him dress and helps plaintiff shave because he cannot hold a razor without cutting himself. *Id*. He is able to play video games with his daughter when she visits twice a month. *PAGEID* 100.

Plaintiff also testified to constant problems with memory and concentration. *PAGEID* 102. He was unclear in his description of his college classes. *See, e.g., PAGEID* 90-92, 96-97. In 2010, he conducted telephone surveys, but his anxiety and memory issues caused him to "mess up reading [the script]." *PAGEID* 92-93.

The vocational expert summarized plaintiff's past relevant work as a short order cook, supervisor of auto detailing, and forklift driver. *PAGEID* 71-77. When asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge, the vocational expert testified that such a claimant could perform plaintiff's past relevant work as an auto detailer and forklift operator. *PAGEID* 123-26. Such a claimant could also perform other unskilled work, including such jobs as cleaner or surveillance system monitor. *PAGEID* 126-27.

**IV. Administrative Decision**

The administrative law judge found that plaintiff had no severe physical impairments but that his mental impairments, *i.e.*, post-traumatic stress disorder and bipolar disorder, are severe. *PAGEID* 59. However, the administrative law judge also found that those impairments neither meet nor equal a listed impairment. The administrative law judge also found "no . . . evidence" that plaintiff's RFC had changed since the July 2006

administrative decision denying plaintiff's prior application for benefits. *PAGEID* 65. Accordingly, the administrative law judge relied on Soc. Sec. Acquiescence Ruling 98-4(6) and adopted the RFC finding from that prior decision. The administrative law judge specifically found that plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is restricted to low-stress jobs that are not fast-paced and do not involve over-the-shoulder supervision." *PAGEID* 63-65. Relying on the testimony of the vocational expert, the administrative law judge found that this RFC would permit the performance of plaintiff's past relevant work as a forklift operator and auto detailer, as well as a significant number of other jobs in the national economy. *PAGEID* 69-70. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from September 30, 2009, through the date of the administrative decision. *PAGEID* 70-71.

**V. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d

524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In his *Statement of Errors*, plaintiff contends that the administrative law judge erred in, *inter alia*, his assessment of plaintiff's RFC, in his assessment of plaintiff's credibility, in his evaluation of the opinions of Dr. Teague and Dr. Cruz, and in his reliance on the testimony of the vocational expert. *Statement of Errors*, pp. 10-19. Plaintiff also argues that the administrative law judge violated the treating physician rule in his evaluation of Dr. Robyn's opinion and that the administrative law judge improperly "played doctor by using his own criteria to judge the objective findings of the doctors." *Id*.

As noted *supra*, the administrative law judge found that plaintiff does not suffer a severe physical impairment. *PAGEID* 95. The administrative law judge noted Dr. Smith's June 2010 opinion that plaintiff was capable of sedentary to light work, Dr. Cruz's July 2010 opinion that plaintiff was limited to medium work, *see PAGEID* 60-61, and the limitations found by

10

Dr. Robyn in June 2011, *see PAGEID* 62.  However, the administrative law judge credited Dr. Teague's February 2010 conclusion "that the record did not support any significant functional limitation attributable to mild degenerative disease in the claimant's cervical and lumbar spine" and that plaintiff's "physical impairments were programmatically non-severe." *PAGEID* 60-61.  However, Dr. Teague did not have the benefit of the substantial evidence generated after the date of his assessment, especially Dr. Ajam's October 2010 diagnosis of "probable rheumatoid arthritis," *see PAGEID* 809, nor did he have the benefit of plaintiff's substantial VA medical records. *See PAGEID* 752-986.  Although the administrative law judge purported to consider "recent treatment records," *PAGEID* 61, he mischaracterized Dr. Ajam's October 2010 diagnosis of "probable rheumatoid arthritis," *see PAGEID* 809, as merely "rheumatoid symptoms."  Indeed, the administrative law judge came perilously close to rendering his own medical opinion.[3]  *PAGEID* 61 ("The claimant was also evaluated for rheumatoid

---

3   Q [ALJ]    What's wrong with your hands?

    A [CLMT]   I have rheumatoid arthritis.

    Q          I don't think you do but maybe –

    A          Well, there's a blood test that says I do, sir.

    ALJ:       Well, it's -- ANA was negative.  The SED rate – was there a SED rate in any of these things, Counsel?

    ATTY:      The blood test that I have that was positive is at 27F, page 179.

    . . .

    ALJ:       Well, I see it but I don't see any evidence clinically of rheumatoid arthritis.  Now it might be.  Is there any synovitis that you saw, Counsel, in any of these records?

arthritis: a rheumatoid factor of 22 was mildly positive, and was accompanied by a sedimentation rate of 35. However, no active synovitis was noted on exam, and the claimant's range of motion and strength was intact in all extremities. Plaquenil was prescribed to manage rheumatoid symptoms, and the claimant said that it 'helped quite a bit.'"). The administrative law judge was not, however, qualified to interpret raw medical data in functional terms. *See e.g.*, *Isaacs v. Comm'r of Soc. Sec.*, No. 1:08-cv-828, 2009 WL 3672060, at *11 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). In short, Dr. Teague's opinion does not provide substantial support for the administrative law judge's determination that there was no evidence that plaintiff's RFC had changed since the July 2006 administrative determination of plaintiff's prior application for benefits. The administrative law judge's RFC determination, which was supported by only Dr. Teague's opinion, is therefore not supported by substantial evidence.

> . . .
>
> ALJ: Did you see any -- I don't see any swelling of the joints, the PIP or DIP joints or anything else like that I could interpret as a -- or somebody interpreted it as evidence of rheumatoid arthritis.
>
> ATTY: Well, there's examinations where he's showing pain throughout his body, that there's numbness and tingling, coordination problems, decreased sensation, problems with lifting and holding objects. That could certainly be evidence. And that he was prescribed arthritis gloves for his hands and a reacher device for his hands, for his upper extremities.
>
> . . .
>
> ALJ: So well, you had a 22 and then it's between -- zero to 20 is normal and 22 is – well, okay. . . .

*PAGEID* 93-95.

12

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** to the Commissioner of Social Security for further proceedings consistent with the foregoing.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

November 12, 2013                                    *s/Norah McCann King*
                                                     Norah M$^c$Cann King
                                          United States Magistrate Judge